UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN MAHER, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>BANK OF NOVA SCOTIA, BARCLAYS BANK PLC, DEUTSCHE BANK AG, HSBC HOLDINGS PLC, and SOCIÉTÉ GÉNÉRALE,<br>        Defendants. | Civil Action No. 14-cv-1459 |
| AIS CAPITAL MANAGEMENT, L.P., on behalf of itself and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>BANK OF NOVA SCOTIA, BARCLAYS BANK PLC, DEUTSCHE BANK AG, HSBC HOLDINGS PLC, and SOCIÉTÉ GÉNÉRALE,<br>        Defendants. | Civil Action No. 14-cv-1642 |

**REPLY MEMORANDUM OF LAW
ON THE SUBJECT OF CLASS STRUCTURE**

## TABLE OF CONTENTS

I.   PREMATURELY DIVIDING THE CLASS TO ADDRESS SPECULATIVE CONFLICTS IS DETRIMENTAL TO THE CLASS AND THE ADMINISTRATION OF JUSTICE ................................................................................................................1

    A.   Differing Claims Rooted in the Same Set of Facts Do Not Warrant Dividing a Class ................................................................................................1

    B.   The Potential for Different Defenses Does Not Warrant Dividing the Proposed Class In Order To Lock In Multiple Structures Of Lead Counsel ..........3

II.  THE NEED FOR SUBCLASSES IS SPECULATIVE AND PREMATURE AT THIS EARLY STAGE ................................................................................................4

CONCLUSION ................................................................................................................5

I. **PREMATURELY DIVIDING THE CLASS TO ADDRESS SPECULATIVE CONFLICTS IS DETRIMENTAL TO THE CLASS AND THE ADMINISTRATION OF JUSTICE.**

Plaintiffs Kevin Maher and AIS Capital Management, L.P. ("Maher Plaintiffs") respectfully submit this reply memorandum in order to further demonstrate that, while this Court has the discretion to create multiple structures of lead counsel, it should not now exercise that discretion. Exercising such discretion now benefits certain lead counsel applicants. But it hurts the class and the administration of justice. It locks in the duplicative inefficiency of multiple structures of lead counsel throughout the case. It places the class (and the Court) on the slippery slope of having vouched for the threshold appropriateness of divisions in the class. This threshold will or may be argued to require additional divisions of the class later to account for other asserted differences among class members. Such precedent may assist Defendants later to argue that supposed intra-class conflicts prevent any certification of any class.

These deleterious effects on the class and the administration of justice are wholly unnecessary. The overwhelming, unifying common ground in **all** of the five opening briefs, is the key point that at this time no fundamental conflicts even exist much less go to the heart of the litigation. This Court should reject the self-serving suggestion by counsel representing only two of the twenty-four actions (Plaintiff Moran and Plaintiff Citra) that inefficient, multiple lead counsel structures should be created because this case is supposedly like *In re LIBOR-Based Fin. Instruments*, No. 11 MD 2262 (NRB), 2011 WL 5007957, at *2 (S.D.N.Y. Oct. 18, 2011).

A. **Differing Claims Rooted in the Same Set of Facts Do Not Warrant Dividing a Class.**

Citra Trading and Moran contend that multiple structures of lead counsel are appropriate because the facts relevant to gold futures and physical gold traders are supposedly different. They are not. The claims all arise from the self-same course of allegedly violative conduct by

1

Defendants and the resulting effects on prices.  Again, the distinction between physical gold and gold futures traders is largely illusory.  In fact, it is nonexistent for Plaintiff Maher and the numerous other class members who participated in both the physical gold and exchange traded derivate markets.  Moreover, transacting in one market does not preclude or replace the other; nor does transacting in either market necessarily result in physical delivery.  The hypothetical exchange-traded/over-the-counter split clearly would **not** account for **all** differences among class members.  Therefore, locking in the inefficiency of multiple lead counsel structures now will empower Defendants later to argue that the Court should further atomize or should deny class certification based upon supposed intra-class conflicts.

Claims of the types here have been permitted to be litigated in a single class even where there was no delivery of the physical commodity to satisfy the futures contract.[1]  Similarly, classes have repeatedly been certified, over defendants' objections, that included some futures traders who did not, and some futures traders who did, engage in physical transactions the results of which, defendants asserted, had to be offset against the results of futures contract transactions.[2]

---

[1] *In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880 (N.D. Ill. 2011) (upholding antitrust claims of both milk futures contract traders and physical cheese purchasers who were all represented by the same class counsel); *In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*, No. 09 Civ. 3690, ECF No. 494 (N.D. Ill. Mar. 13, 2014) (preliminarily approving settlement class consisting of persons who transacted in milk futures as well as purchasers of physical milk and physical cheese that were not deliverable on the contract); *compare In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC), Mem. & Order, ECF No. 80, at 16-45, (S.D.N.Y. Dec. 20, 2013) (upholding plaintiffs' Commodity Exchange Act and Sherman Act claims brought on behalf of a single class including both futures and physical cotton on call purchasers, and represented by same lead counsel).

[2] *See, e.g.*, *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 183 (S.D.N.Y. 2005) (rejecting argument that class certification is precluded when class members, "including purchasers, sellers, and hedgers," have potentially conflicting interests in showing defendants' alleged misconduct caused the price to be lower or higher on particular dates); *Natl. Super Spuds, Inc. v New York Mercantile Exch.*, 77 F.R.D. 361, 369 (S.D.N.Y. 1977) (certifying a class of futures traders who were both speculators and hedgers, over defendant's objections, because "it is not clear that the interests of speculators in this lawsuit are inimical to those of hedgers").

No plaintiff disputes the critical interplay between the physical and futures markets for gold.[3]  Physical traders regularly trade derivatives and options to hedge their physical positions. Again, there are exchange for physical ("EFP") transactions,[4] and the opportunity to take delivery of an attractive physical commodity (gold) on the futures contracts here.  At the end of trading in each gold futures contract, it becomes a physical gold market during the delivery period.  All of this further blurs the line between exchange-traded and over-the-counter transactions in multiple ways that were not present in LIBOR.  *See* Subpart B for a discussion of the *LIBOR* action. The substantial number of class members who participated in both the physical gold and exchange-traded gold markets also indicates the interactions and linkage between such markets.

B. **The Potential for Different Defenses Does Not Warrant Dividing the Proposed Class In Order To Lock In Multiple Structures Of Lead Counsel.**

Moran and Citra contend that the existence of anticipated, hypothetical defenses to plaintiffs' complaints, supposedly justifies the inefficiencies and risks that arise from locking in multiple counsel structures at this preliminary stage.  Moran points to the possible "antitrust standing" defense as a basis for splitting the class.  But even he emphasizes that this defense lacks any validity. *See* Moran Br. at 1 n.1.  For the proposition that an antitrust standing defense could warrant a division of classes, Moran and Citra both cite to *In re LIBOR-Based Fin. Instruments*, No. 11 MD 2262 (NRB), 2011 WL 5007957, at *2 (S.D.N.Y. Oct. 18, 2011).  But that Court expressly reserved any opinion on the standing argument.  *Id.*

---

[3]  In fact, Plaintiff Moran clearly acknowledged the significant interrelation between the price of derivative contracts and the gold fix in its complaint.  *Cf.* Moran Compl., 14-cv-2213, ECF No. 2, ¶ 74 ("A recent academic study by Andrew Caminschi and Richard Heaney analyzed high-frequency spot and futures price data for a six year period and found that gold futures 'are significantly impacted by the London PM gold fixing process.'" (citation omitted)).
[4]  The CME defines an EFP as "a position in the underlying physical instrument for a corresponding futures position." *See* http://www.cmegroup.com/clearing/trading-practices/efp-efr-eoo-trades.html.

Citra invokes a possible defense under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). *Morrison* issues would not create any conflict. They may be largely mitigated or fully addressed by appropriately defining the class in a consolidated amended complaint. *Morrison* addressed the extraterritorial application of securities laws. This has little or no application here.[6] *LIBOR* addressed the *Morrison* question, concluding that "a claim is within the CEA's domestic application if it involves (1) commodities in interstate commerce or (2) futures contracts traded on domestic exchanges." *LIBOR*, 935 F. Supp. 2d at 666, 696. Any group of plaintiffs whose claims stem from gold in interstate commerce or COMEX futures contracts would fall within the territorial scope of the CEA.

## II.  THE NEED FOR SUBCLASSES IS SPECULATIVE AND PREMATURE AT THIS EARLY STAGE.

The cases relied upon by Moran and Citra do not support their arguments.[7] Moran asserts that even a "*potential* for conflict among members of a class" warrants subclassing and separate counsel. Moran Br. at 2 (emphasis in original). But it is well-settled that subclassing is only required where a "fundamental conflict" **both** exists, and goes to the "very heart of the litigation."[8] There are no *fundamental* conflicts at this early stage in the litigation let alone ones

---

[6]  *See City of Pontiac Policemen's and Firemen's Retirement Sys. v UBS AG*, 12-4355-CV, 2014 WL 1778041, *4 (2d Cir. May 6, 2014) ("*Morrison* does not support the application of…the Exchange Act to claims **by a foreign purchaser of foreign-issued shares on a foreign exchange** simply because those shares are also listed on a domestic exchange").

[7]  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ("*Amchem*"), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ("*Ortiz*") both arose in the context of proposed settlements with proposed settlement classes. In those cases, unlike this one, there was a fully developed record with respect to the class and the issues confronting the class. While there may, after the factual record is developed here, be a basis for finding some division within the current class, neither *Amchem* nor *Ortiz* has application at the outset of litigation.

[8]  *See, e.g, In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 259 (2d Cir. 2011) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.,* 504 F.3d 229, 246 (2d Cir.2007); *accord Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir.2000) (A conflict is fundamental when it "threatens to become the focus of the litigation" and "there is a danger that absent class members will suffer

go to "the very heart" of the litigation.  Each member of the class has **already** allegedly experienced an injury.  This is unlike *Amchem* or *Ortiz*, which required subclasses between currently injured and potential future injury claimants.

There is not a claim that, at this stage, can clearly be identified as being of greater value than any other.  Thus, this case is also unlike *In re Literary Works*, 654 F.3d at 258-60  (majority holds that each subclass required separate representation because "[t]he ingredients of conflict identified in *Amchem* and *Ortiz* are present here . . . . [t]he Settlement before us confines compensation and limits defendants' liability by setting an $18 million recovery and cost ceiling, and distributes that recovery by making essential allocation decisions among categories of claims").  Moreover, because of the relative parity of the exchange-based and physical markets, there are not even any **signs** now that one claim would predominate over another.  Also, there are substantial overlaps between the members of both proposed subclasses.  Against all this, the fact that it is **possible**, after discovery, that one claim may predominate, does not justify splitting the class now.

## CONCLUSION

The Court should not exercise its discretion to divide the putative class at this preliminary stage.

Dated: June 6, 2014                                      Respectfully Submitted,

                                                    */s/*Christopher Lovell
                                                    Christopher Lovell

---

if their representative is preoccupied with defenses unique to her."); *see also In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 92 (S.D.N.Y. 1998) (citing *Green v. Wolf*, 406 F.2d 291, 299-301 (2d Cir. 1968) ("[I]t is settled in this Circuit that factual differences in the amount of damages, date, size or manner of purchase, the type of purchaser, the presence of both purchasers and sellers, and other such concerns will not defeat class action certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class).

>Fred T. Isquith Jr.
>LOVELL STEWART HALEBIAN JACOBSON LLP
>61 Broadway, Suite 501
>New York, New York, 10006
>Telephone: (212) 608-1900
>Fax: (212) 719-4677
>clovell@lshllp.com
>fisquith@lshllp.com
>
>*/s/* Seth R. Gassman
>Seth R. Gassman (SG-8116)
>Michael D. Hausfeld (N.Y. Bar No. 4722963)
>William P. Butterfield (*admitted pro hac vice*)
>Timothy S. Kearns(*admitted pro hac vice*)
>HAUSFELD LLP
>1700 K Street, NW; Suite 650
>Washington, D.C. 20006
>Telephone: (202) 540-7200
>Facsimile: (202) 540-7201
>sgassman@hausfeldllp.com
>mhausfeld@hausfeldllp.com
>wbutterfield@hausfeldllp.com
>tkearns@hausfeldllp.com
>
>*Attorneys for Plaintiff AIS Capital Management, L.P.*